NOV 2 4 2008

FILED

UNITED STATED DISTRICT COURT

DISTRICT OF CONNECTICUT

2008 DEC - 1  P 12: 05

APPLICATION FOR A WRIT OF HABEAS CORPUS

PURSUANT TO 28 U.S.C. 2241

BY A PERSON IN FEDERAL CUSTODY

U.S. DISTRICT COURT
DISTRICT COURT

Dorothea Daraio 40894-050, Petitioner
Federal Correctional Institution
Route 37
Danbury, Ct. 06811

CASE NO. 3:08 cv 1812 (MRK)

v.

Harley G. Lappin, Director, Respondent
Federal Bureau of Prisons
320 First Street, NW
Washington, DC 20050

        and

Donna Zickefoose, Warder, Respondent
Federal Correctional Institution Danbury
Route #37
Danbury, Ct. 06811

## CONVICTION UNDER ATTACK

1)    Name and location of the court which entered the judgment of conviction under

attack United States District Court for District of New Jersey,

Camden, NJ

2)    Date judgment of conviction was entered    November 10, 2004

3)    Case number _____ CR-04-00245

4)    Type and length of sentence imposed __41 Months Confinement__

5)    Are you presently serving a sentence imposed for a conviction other than the
conviction under attack in this motion? Yes _x_   No ___

6)    Nature of the offense involved (all counts) 26 U.S. Code §7201 (Tax

Evasion)

7)    What was your plea? (check one)
Not Guilty _x_   Guilty ___   Nolo Contendere ___

8)    If you entered a guilty plea to one count or indictment, and a ___ guilty plea to
another court or indictment, give details:

_____

_____

9)    If you entered a plea of guilty pursuant to a plea bargain, state the terms and
conditions of the agreement _____

_____

10)   Kind of trial (check one)   Jury _x_ Judge only ___

11)   Did you testify at trial? Yes _x_ No ___

### DIRECT APPEAL

12)   Did you appeal from the judgment of conviction?    Yes _x_ No ___

13)   If you did appeal, give the name and location of the court where the appeal was
filed, the result, the case number and date of the court's decision (or attach a copy of

the court's opinion or order): <u>Affirmed</u>

14) If you did not appeal, explain briefly why you did not: _____

a) Did you seek permission to file a late appeal? Yes __ No __

## POST-CONVICTION PROCEEDINGS

15) Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?   Yes <u>x</u> No __

16) If your answer to 15 was "Yes," give the following information:

    a) FIRST petition, application or motion.

        1. Name of court <u>United States Supreme Court</u>

        2. Nature of proceeding <u>Petition for Certiorari</u>

        <u>#06-345</u>

        3. Claims raised <u>1) Trial court should not have</u> <u>evidence of other wrong doing under tax laws pursuant to Rule 404(b) so that new trial was required. Citation 127 S. Ct. 932</u>

        4. Did you receive an evidentiary hearing on your petition, application or motion? Yes __ No <u>x</u>

        5. Result <u>Petition denied.</u>

        6. Date of result <u>January 8, 2007</u>

        7. Did you appeal the result to the federal appellate court having

jurisdiction? Yes __ No x__  If you did appeal, give the name of the court
where the appeal was filed, the result, the case number, citation and date
of the court's decision (or attach a copy of the court's opinion or order)

_____

_____

8.    If you did not appeal, briefly explain why you did not  _____

   No higher court _____

_____

b) As to any SECOND petition, application or motion, give the following
information:

   1.    Name of court **Unites States District Court for**
**District of New Jersey, Camden, NJ.**
   2.    Nature of proceeding _____

   **Ineffective assistance of counsel.** _____

   3.    Claims raised **Trial counsel should have demanded full**
**and complete cautionary instruction to jury.  Trial counsel**
**failed to object to prosecutorial misconduct.  On direct appeal,**
**counsel that the sentencing court erred on Sentencing Guideline score...**
   4.    Did you receive an evidentiary hearing on your petition, application
or motion? Yes __ No **x**

   5.    Result __**Denied**_____

   6.    Date of result __**May 9, 2008**_____

   7.    Did you appeal the result to the federal appellate court having
jurisdiction? Yes **x** No __  If you did appeal, give the name of the court
where the appeal was filed, the result, the case number, citation and date
of the court's decision (or attach a copy of the court's opinion or order) ___

   **U.S. Court of Appeals for the Third Circuit, Phila.,Pa.**

   **Applied for a Certificate of Appealability on June 20, 2008**

_____

   8.    If you did not appeal, briefly explain why you did not _____

CLAIM ONE:  I am requesting to immediately be transferred to a Community Corrections facility for the final 10 months of my 41 month sentence with consideration made as directed by the Second Chance Act of 2007, on an "individual basis" taking into consideration my individual reentry needs due to my extraordinary and compelling reasons and in the manner expressed by Congress.

SUPPORTING FACTS:  My husband of 38 years was put on life support March 11, 2008 and remained in critical care or on life support until his death June 12, 2008.  Since March 2008 the mortgage on our marital home has not been paid.  On December 8, 2008 my minor son will be finished the boarding school program for teens at risk.  Without a high school diploma, learning disabled and being a minor he has no resources to support himself.  On December 8, 2008 he is homeless because there is no family member capable of caring for him since his father's death.  Placement in a halfway house would enable me to work and fund a boarding school that meets his academic and custodial needs.

The judge was not aware of my extraordinary and compelling needs at the time of sentencing me to FCI Danbury.  Warden Zickefoose based her decision to grant me 180 days community custody on "It is the BOP's experience that inmates reentry needs can usually be met with six months or less in RRC."  She made her final decision of 180 days on June 24, 2008 before she received notice of my extraordinary and compelling reentry needs.  In her response to a senatorial inquiry on September 23, 2008 it appears Warden Zickefoose was unaware of my extraordinary and compelling needs and Unit Team on October 1, 2008 still only recognized my need to place my son in boarding school.

My crime was non violent, my custody level is minimum/community and I have successfully completed two overnight furloughs.  My work record outstanding, I have never been written up for an infraction, my fine is paid and I have completed every RRP and educational class made available without missing a session.  I have devoted time to civic duty by being Head Usher for almost 2 years at the Christian Church Service.

Community Corrections Facility has the resourses to enable me to adjust and prepare for reentry needs where I could meet the needs of my extraordinary and compelling circumstances including; the ability to work in the community enabling me to support my son, parent-child relationship by bonding with family on weekend passes and go to counseling etc.

YES I sought administrative relief to claim ONE.
On August 11, 2008 I filed an INMATE REQUEST TO STAFF for one year
halfway house due to my extraordinary and compelling reason; my husband's
death on June 12, 2008 leaves me the only family member capable of
caring for my minor son. On October 7, 2008 I filed an ADMINISTRATIVE
REMEDY PROCEDURE for INFORMAL RESOLUTION FORM.  I was told my request
was not denied and on October 8, 2008 was asked to wait 7 - 10 business
days while they were still reviewing.

CLAIM TWO:  Warden Zickefoose and The Bureau of Prisons did not
consider all 5 factors in 18 USC 3621 in their denial process.

SUPPORTING FACTS:  I repeat all the SUPPORTING FACTS IN CLAIM
ONE. My home has been approved by probation.  I have a job to report
to.  My son and I have a private HMO to pay for his counseling and our
medical needs.

Resources are available.  Department of Justice Bureau of
Prisons in Rules and Regulations published 10/21/08 consider
"home detention" by their definition a place of inprisonment.("home detention"
"as a program of confinement and supervision that restricts to his place
of residence continously.")  The Bureau of Prisons has my custody
level minimum/community.  In lowering my custody level they decided
community custody was the least restrictive facility necessary to
ensure adequate security.

YES I sought administrative relief as to CLAIM TWO:  On October 27, 2008
I filed REQUEST FOR ADMINISTRATIVE REMEDY.  On November 10, 2008 I received
Warden Zickefoose's response granting 180 days decided on June 24, 2008 and
transfer would be done on March 24, 2008 meeting my family and reentry
needs.  Because of the extraordinary and compelling issues I raised I
should go to Unit Team immediately and request a reduction in sentence or
"Compasionate Release".

CLAIM THREE:  Due to the irreparable harm caused by any further
delay in transferring me to a facility that meets my custody level and
with consideration of my extraordinary and compelling needs I request the
court to issue a preliminary injunction to transfer me immediately to
home detention or community corrections facility where I can complete the final
10 months of my 41 month sentence and support my minor,learning disabled
son financially and custodially after his father's death.

SUPPORTING FACTS:  Please see delays made in notifying me of
their June 24, 2008 decision when time is of the essence due to my
extraordinary and compelling reentry needs and continuance of Administrative

Relief.

Warden Zickefoose had no guidance to consider the change in law on April 9, 2008 when the Second Chance Act was signed.  The Bureau of Prisons' Director delayed in his obligation to follow the law requiring him to issue regulations pursuant to pre-release custody to place a prisoner in community corrections by  issuing regulations over three months late on October 21, 2008 in violation of the required deadline.

Because before changing existing regulations the Bureau of Prisons has to follow the Administrative Procedures Act's rule making requirements they were unable to change the regulations 28 CFR 570.20 and 28 CFR 570.21 in existance.  These regulations this circuit has decided are without reguard to "individual basis" in the decision making process.

BOP admits the Publication Vol 73 No. 203 10/21/08 Rules and Regulations is a notice and comment obligation published as required by the Second Chance Act.  It does not change the Second Chance Act made into law on April 9, 2008 in any way.

Bureau of Prisons' Director went further ignoring the needs of decision makers by not issuing new guidance on Community Corrections, leaving the only Program Statement available to the decision makers on Community Correction 7310.04 dated 12/16/98?

The BOP is not limited in  any way and shall consider each prisoner on an "individual basis" using their discretion a prisoner can be placed in home confinement more than 10% or 6 months of their sentence.

The location the prisoner is incarcerated doesn't have to look like Sing Sing but restrictive enough to insure adequate security as guided by the custody level the Bureau of Prisons assigns.

I have waited 5 months in the decision making process. The Bureau of Prisons Director and his employees have ignored STATUES trump Regulations and Procedure Statement.

Further delays in transferring me to a facility that is the least restrictive facility necessary to ensure adequate security and meets my classification custody level of minimum/community where I can work to support my family could do me irrepable harm and cause regression in a troubled Multiply Disabled (OHI/SLD) teenager at risk who requires out-patient counseling, establish healthy relationships with family

and be placed in a school that meets both his academic and emotional needs after the death of his father.  The alternative is him being homeless, without means of support or custodial care.

On December 8, 2008 my son has no place to live.  Time is of the essence and due to the Bureau of Prisons lack of response not only when informing me of the time granted me for Community Custody but because of their delay in following the law I request this court understand why Administrative procedures have not been completed and make a decision.

YES I sought administrative relief to CLAIM THREE.  On November 12,2008 I filed a ADMINISTRATIVE REGIONAL REMEDY APPEAL.  I am awaiting their response.

18) YES U.S. Court of Appeals for the Third Circuit Motion Under 28 USC 2255 to vacate, set aside, or correct sentence for denial of effective assistance of counsel and ineffective assistance of counsel and are not issues raised in this petition.  I am awaiting Certificate of Appealability.

19)  Statue governing motions to vacate, set aside or correct sentence does not recognise challenges to the manner to carry-out a prisoner's sentence 28 U.S.C.A. 2255.

While a federal prisoner's challenge to the execution of a sentence, in contrast to the imposition of a sentence, is properly filed pursuant to the habeas corpus statue; execution of a sentence included but is not limited to, prison transfers, type of detention and prison conditions 28 U.S.C.A. 2241.

Wherefore, petitioner prays that the court grant him such relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

_____

_____

Attorney's Full Address and
Telephone Number

*Dorothea Daraio*
Petitioner's Original Signature

DOROTHEA DARAIO 40894-050
Petitioner's Inmate Number


## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the petitioner in this action, that he/she has read this petition and that the information contained in the petition is true and correct.  28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at **DANBURY, CT.** on _11/19/2008_
_____ _____
(Location)                (Date)

*Dorothea Daraio*
Petitioner's Original Signature


*Candus Jm Wheeler Monne*

11/19/2008

THE ENCLOSED EXHIBITS VALIDATE MY PRECEDING REASONS:

Learning Evaluation for Anthony Daraio dated 10/3/2008

Letter from Terry McCarthy, The family Foundation School

Inmate Request to Staff dated 8/11/2008

Inmate Requests to Staff & Disposition:

| | |
|---|---|
| Mrs. O'Sullivan | dated 8/4/08 |
| Mr. LeFevre | dated 8/5/08 |
| Dr. Jenkins | dated 8/4/08 |
| Mrs. Wattree | dated 8/4/08 |
| Mrs. Wattree | dated 11/13/08  two for different requests |

Administrative Remedy Procedure for Inmates Informal Resolution dated 10/8/08/Coments.

Request for Administrative Remedy dated 10/27/08

Warden Zickefoose's Administrative Remedy Response dated 11/6/08

Response to Senate inquiry from Warden Zickefoose dated 11/23/08

Letter to me from my minor son Tony

Inmate Skills Development Plan dated 10/1/08 (Page 5)

Regional Administrative Remedy Appeal dated 11/12/08

# Bonita Blazer, Ph.D. & Associates

### Educational Consultants

Suite 202 East Building
302 N. Washington Avenue
Moorestown, NJ 08057

(856) 234-1270
Fax: (856) 234-0632

www.bblazer.org

CONFIDENTIAL

## LEARNING EVALUATION

**NAME: ANTHONY DARAIO**

**DATE:** 10/3/2008

**D.O.B.:** 5/11/1991

**C.A.:** 17 years, 5 months

**EXAMINER:** Kenneth L. Herndon, Ed.D.,
LDT/C, PRSE-ED

**GRADE:** 9th

**SCHOOL:** Family Foundation

**HOME ADDRESS:** 130 Mill Road
Marlton, NJ 08053

**PHONE:** 856-753-0108 - home
856-753-5217 - cell

## REASON FOR REFERRAL

This comprehensive independent evaluation is being completed at the request of the parent. It is the purpose of this assessment to ascertain Anthony's academic levels of functioning and suggest interventions where appropriate. These findings will assist with Anthony's educational planning.

## BRIEF BACKGROUND HISTORY (Sources, file review, client interview)

As per the file review, Anthony is adopted and has been raised by the Daraios. Anthony's biological family history is positive for substance abuse in both parents. As noted in the records an older brother had died from a drug overdose. In 1987, Anthony's adoptive father was diagnosed with asbestosis. In June 2008, he passed away at the age of 66.

The records report a normal birth with no implications. Anthony slept and fed without difficulty. Developmental language milestones were attained within normal limits with walking achieved slightly late. No serious issues are reported in the file except for drug use and current acne medication.

Anthony's formal education began in Marlton, New Jersey where he completed kindergarten through grade eight. It is reported that he achieved satisfactory grades through elementary school. However, Anthony began using drugs in middle school and significantly increases in eighth grade.



*NJ State Certified Independent Child Study Team*

## General Observations

Tony presented as a polite and well-groomed youth who cooperated with all aspects surrounding the evaluation. At interview, he related in an affable, spontaneous, and candid manner. His speech was clear. He did not hesitate to take responsibility for his previous drug abuse and communicated a sincere desire to return to a "normal" school and "do something positive" with his life. He acknowledged having been overly concerned with being accepted by others. He indicated that he has been clean for two years and has found counseling and supportive teachers very helpful. He is now able to deal with normal stressors without overreacting. He feels capable of setting and establishing appropriate boundaries in his interpersonal relationships and has no desire to associate with a peer group that is "unwilling to follow rules."

Tony indicated that the death of his father in June of this year had reinforced his desire to become productive and to work towards achieving long-range goals. At this point, he would like to finish high school and perhaps attend college.

Tony rated science and global history as his strongest subject areas. He struggles more with math. He likes teachers "who do not let me give up." He is able to work effectively alone or in cooperative groups. He feels his note-taking skills are adequate.

Tony's formal test behavior was focused, well-paced, and very persistent. He displayed some intermittent nervous restlessness and clearly wanted to do his best. He periodically sought feedback about his performance and responded well to positive support. He was pleased with his successes and accepted upper limit failure calmly. Given his effort, today's findings were judged valid and reliable.

## Tests Administered

## Wechsler Adult Intelligence Scale: Third Edition (WAIS-III)

|  | Scaled I.Q. Scores | Percentile |
|---|---|---|
| Verbal | 107 | 68 |
| Performance | 122 | 93 |
| Full Scale | 114 | 82 |

| Composite Standard Scores | | | | |
|---|---|---|---|---|
|  | Verbal Comprehension | Perceptual Organization | Working Memory | Processing Speed |
| Score | 114 | 114 | 90 | 93 |
| Percentile | 82 | 86 | 25 | 32 |

| Verbal Subtests | | Performance Subtests | |
|---|---|---|---|
| Vocabulary | 11 | Picture Completion | 13 |
| Similarities | 15 | Digit Symbol-Coding | 9 |
| Arithmetic | 11 | Block Design | 14 |
| Digit Span | 6 | Matrix Reasoning | 11 |
| Information | 12 | Picture Arrangement | 19 |
| Comprehension | 13 | (Symbol Search) | 9 |
| (Letter-Number Sequencing) | 8 | | |

Incomplete Sentences
Attention Deficit Hyperactivity Disorder Test: ADHDT (Gilliam)
Conners' Continuous Performance Scale
Achenbach Child Behavior Checklist
Achenbach Youth Self-Report

## Test Interpretations

On the WAIS-III, Tony achieved a full scale I.Q. score of 114. This placed him at the 82nd percentile nationally and indicated high average general cognitive ability. There is a 95 percent probability that his true score falls between 110 and 118.

Tony demonstrated high average verbal comprehension (VC composite score 114). There were some gaps in his expressive vocabulary, but he scored overall average. Verbal abstract reasoning was superior. He readily handled language based tasks when they were presented in meaningful contexts. His general knowledge base and ability to verbalize an awareness of social conventionality were in the high average range.

Tony's working memory or ability to hold information in short-term memory while manipulating it was scattered and significantly less developed than her verbal reasoning. His ability to perform mental computations was solid average (63rd percentile). In contrast, he struggled with novel tasks requiring him to recall unrelated numbers and letter/number sequences. Functionally, he may have difficulty remembering novel or decontextualized material long enough to develop or apply it.

Tony's ability to think and reason with visual materials was high average (Perceptual Organization Index score 116). He demonstrated high average visual alertness to detail. Spatial orientation was superior. His fluid reasoning needed to solve matrices was well within average limits. Remarkably, he achieved a perfect score on "Picture Arrangement," a task assessing visual sequential thinking. It also correlates with one's ability to see cause and effect relationships in social situations.

Tony's ability to perform rote visual tasks quickly without making mistakes was within the average range (Processing Speed Index score 93). He displayed average visual motor speed/memory needed for rapid copying. His visual scanning ability was also average.

On the ADHDT, Tony's sister and grandmother denied any significant attention problems. His performance on computerized testing for attention problems was also within the satisfactory range. The related task, the Conners' Continuous Performance Test, is a standardized computer task requiring sustained attention. The individual must respond as fast as he can to stimulus letters presented from one to four seconds apart. He must avoid or inhibit responding to the letter "X." The entire test takes about fourteen minutes.

A numerical summary of Tony's data appears at the end of this report. To summarize, Tony's hit reaction was average, and he did not make many errors. He showed no significant loss of attention over the course of the test. He did have mild difficulty discriminating letters similar to the X. The speed of his responses also deteriorated a bit when the time interval between the stimulus letters was changed. He may have a little difficulty adjusting to rapid changes in task demands, i.e., transitions.

Tony's sister and grandmother completed the Child Behavior Checklist. Total Problems were well within the normal range (T-score 47, 38th percentile). Tony's responses on the Youth Self-Report were also within normal limits (Total Problem T-score 45, 31st percentile). Since Tony has had very little contact with his family, his YSR profile more likely reflects his current concerns. He noted he sometimes acts too young for his age. At times, he acts without thinking. He can be stubborn and hot-tempered. Self-reported "positive" qualities were well within the average range (69th percentile). Tony views himself as honest, friendly, and capable of asserting himself.

Tony is understandably concerned about the recent loss of this father. Tony reported he feels happiest when "doing well and being home with my family." He does not when people make fun of him. He appears to have formed some strong and positive identifications with his teachers, and he respects those who set and enforce clear expectations. He anticipates growing up to "be honest and trustworthy." His wishes today were (1) my dad and two brothers to be back, (2) have my family always be together and happy, and (3) (have) truly good friends.

## Summary

Tony, age 17:4 years, presents with a history of drug abuse dating to middle school. He failed seventh and eighth grades and in September of 2006, he was placed in a residential treatment facility in Hancock, New York. He has been drug-free for two years and has completed ninth grade. He will be exiting his current program in December of this year and is being evaluated to help determine an appropriate school placement.

When seen today, Tony's test behavior was focused, well-paced, and very persistent. He spoke about his father's death in June of this year due to asbestosis and how it has intensified his desire to remain drug-free, goal-oriented, and productive. He spoke positively about his current program and emphasized that he performs well for teachers who have high expectations. He feels he has developed effective coping strategies needed to remain clean and is looking forward to attending school in a non-therapeutic environment.

Current testing indicated high average general cognitive ability (WAIS-III full scale I.Q. score 114). Verbal and visual reasoning abilities were overall high average, and Tony had no difficulty

"performing on-demand" on related tasks. Working memory was scattered, with subtest scores ranging from borderline to average. Processing speed was average.

On the Achenbach Scales, Tony's CBC and YSR profiles did not reveal any significant behavior or emotional problems. The ADHDT and computerized performance testing (Conners' CPT) were negative for attention problems.

## Recommendations

In conjunction with this assessment, Tony was seen on 10/3/08 for a learning evaluation with Dr. Herndon. Based on the WJ-III, he demonstrated significant aptitude/achievement discrepancies in mathematics and oral expression. Academic fluencies were also weak. Given these findings and Tony's history of drug addiction, he could be considered eligible for special education services under the classification of Multiply Disabled (OHI/SLD). A special education classification would provide him with more appropriate academic interventions and facilitate transitional planning. Given Tony's age and limited number of high school credits, the latter would be critiqal. These issues as well as specific recommendations for developing an appropriate I.E.P should be reviewed in Dr. Herndon's report.

If Tony attends a boarding school, he should continue to have access to out-patient counseling. He should be placed with teachers who will insist that Tony meet high expectations but also support him emotionally.

James M. Priest, Ph.D., NCSP
National School Psychology Board Certification #11808

JMP/jp

*The*
*Family*
*Foundation*
*School*

Building Character Changing Lives.

Dear Dorothea,

First let me express Lindy's and my condolences for your loss. We wanted very much to be present for Tony at the funeral, but it proved to be impossible. Tony is special to us, albeit problematic at times, and we want the very best for him.

Joe and I had talked about a December 08 departure for Tony. Much of that was contingent on his grades and participation in the program. He has improved to some degree, but needs to do more. He tends to be angry and sullen, at times, and can be very uncommunicative or provocative. Of course, it is understandable, but he can and needs to change; simply by learning to monitor himself and establishing healthy boundaries.

Lindy and I both believe he can be successful if he applies himself with a measure of consistency. Also, we are anxious for him to establish healthy relationships with his family. We will assist you in your goals in any way that we can. At this time, I would suggest that you begin to look for a school that can meet his academic and emotional needs for this December that is not quite as structured as we are. I do not know the availability of such schools. I would suggest that you write to Jeff Brain, Director of Admissions, at this address. In the meantime I will tell him to expect correspondence from you, and what you will be asking. I'm sure he will do what he can.

I hope this letter finds you well. If we can communicate by letter more often, please let me know; I would be happy to do so.

Sincerely,

Terry McCarthy

BP-S148.055
CDFRM

INMATE REQUEST TO STAFF
U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU PRISONS

TO: (NAME AND TITLE OF STAFF MEMBER)          DATE: _8/4/08_

_Mrs. O'Sullivan_

FROM: _Dorothea Daraio_          REGISTRATION NO: _70894-050_

_Garage_                          _Camp_
WORK ASSIGNMENT:                  UNIT:

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on the back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

_In July I requested the attached_
_highlighted regulations from you and received_
_a note there were no new policy statements_
_since 1998._
_As per Public Law 110-199 April 9, 2008_
_The BOP had a 90 day deadline to issue_
_Regulations pursuant to placing prisoners in_
_Community Corrections._
_Please provide me with a copy of_
_these regulations or advise me where I_
_can find them in the law library._

DISPOSITION:

Program Statement 7310.04 is dated 12/16/1998
     Community Corrections Center (ccc) Utilization and Transfer Procedure
is the most current Program Statement.

Signature of staff Member                    Date

_Ms. R. O'Sullivan_                          _8/05/08_

Record copy - File; Copy - Inmate

BP-S148.055
CDFRM

**INMATE REQUEST TO STAFF**
**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU PRISONS**

TO: (NAME AND TITLE OF STAFF MEMBER)        DATE: _8/6/08_

_MR. LE FEVRE - CASE MANAGER CCC._

FROM: _DOROTHEA DARAIO_        REGISTRATION NO: _40894-050_

_GARAGE_        _CAMP_
WORK ASSIGNMENT:        UNIT:

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on the back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

_As per Public Law 110-119, April 9, 2008 the BOP had a 90 day deadline to issue regulations pursuant to placing prisoners in a community corrections center._

_Program statement 7310.04 dated 12/16/98 is the most current community corrections center (CCC) utilization and transfer procedure available in the law library._

_Please provide me with a copy of the new regulations or advise me where I can find them in the law library. I have contacted the camp case manager and she has not yet received any._

DISPOSITION: _Ms. Daraio, The BOP + Dept. of Justice are making all reasonable efforts to expeditiously process new regulations regarding RRC placement under the 2nd Chance Act. This process takes several months to complete. BOP staff will be notified as soon as the new regulations take effect. The BOP is already complying with the substantive directives of the Act. Pursuant to the 2nd Chance Act, your unit team will make a determination + recommendation for length of_

Signature of staff Member        Date

_8/13/08_

Record copy - File; Copy - Inmate

_placement in a RRC that is sufficient duration to provide you the greatest likelihood of successful reintegration into the community._

BP-S148.055
CDFRM

**INMATE REQUEST TO STAFF**
**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU PRISONS**

TO: (NAME AND TITLE OF STAFF MEMBER)        DATE: _8/5/08_

_DR JENKINS - EDUCATION_

FROM: _DOROTHEA DARAIO_        REGISTRATION NO: _40894-05C_

_GARAGE_        _CAMP_
**WORK ASSIGNMENT:**        **UNIT:**

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on the back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

_PLEASE SEE ATTACHED REQUEST DATED 8/4/08_
_TO MRS. WATTREE. I WAS ADVISED SHE HAD_
_NO NEW REGULATIONS AND I SHOULD SEE_
_MRS O'SULLIVAN. I DID THAT IN JULY AFTER_
_THE 90 DAYS AND WAS TOLD THERE HASN'T BEEN_
_ANY CHANGE ON COMMUNITY CUSTODY POLICY_
_STATEMENT SINCE 1998. SHE HAS YET TO GIVE ME NEW REGULATIONS_
_MRS WATTREE SAID I SHOULD REQUEST THE NEW_
_REGULATIONS PURSUANT TO PLACING PRISONERS IN_
_COMMUNITY CORRECTIONS FROM YOU._
_PLEASE PROVIDE ME WITH THE REGULATIONS OR_
_WHERE I CAN FIND THEM. THANK YOU,_
_Dorothea Daraio_

**DISPOSITION:** Ms. Daraio- A current list of required BOP program statements is available
in the law library. For policy statements not on the required inventory,
you will need to contact the department affected. In this case, contact
the case management coordinator for further assistance. If he/she feels

Signature of staff Member        Date
        _8/6/08_

Record copy - File; Copy - Inmate

compelled to place the policy statement in the law library,
Education will be notified.

BP-S148.055
CDFRM

**INMATE REQUEST TO STAFF**
**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU PRISONS**

TO: (NAME AND TITLE OF STAFF MEMBER)       DATE: _8/4/08_

_Mrs. Wattree, Case Manager_

FROM: _Dorothea Darnio_       REGISTRATION NO: _90894-050_

_Garage_                                    _Camp_

**WORK ASSIGNMENT:**                        **UNIT:**

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on the back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

_As per Public Law 110-199 April 9, 2008 the_
_BOP had a 90 day deadline to issue regulations_
_pursuant to placing prisoners in community_
_corrections._
_Please provide me with a copy of_
_these regulations or advise me where I_
_can find them in the law library._

**DISPOSITION:**

_See Mr. Jenkins_

Signature of staff Member _____  Date _____  _5/4/11_

Record copy - File; Copy - Inmate

PUBLIC LAW 110–199—APR. 9, 2008      122 STAT. 693

"(2) HOME CONFINEMENT AUTHORITY.—The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

"(3) ASSISTANCE.—The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during prerelease custody under this subsection.

"(4) NO LIMITATIONS.—Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

"(5) REPORTING.—Not later than 1 year after the date of the enactment of the Second Chance Act of 2007 (and every year thereafter), the Director of the Bureau of Prisons shall transmit to the Committee on the Judiciary of the Senate and the Committee on the Judiciary of the House of Representatives a report describing the Bureau's utilization of community corrections facilities. Each report under this paragraph shall set forth the number and percentage of Federal prisoners placed in community corrections facilities during the preceding year, the average length of such placements, trends in such utilization, the reasons some prisoners are not placed in community corrections facilities, and any other information that may be useful to the committees in determining if the Bureau is utilizing community corrections facilities in an effective manner.

"(6) ISSUANCE OF REGULATIONS.—The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is— <span style="float:right">Deadline.</span>

"(A) conducted in a manner consistent with section 3621(b) of this title;

"(B) determined on an individual basis; and

"(C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.".

(b) COURTS MAY NOT REQUIRE A SENTENCE OF IMPRISONMENT TO BE SERVED IN A COMMUNITY CORRECTIONS FACILITY.—Section 3621(b) of title 18, United States Code, is amended by adding at the end the following: "Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.".

SEC. 252. RESIDENTIAL DRUG ABUSE PROGRAM IN FEDERAL PRISONS.

Section 3621(e)(5)(A) of title 18, United States Code, is amended by striking "means a course of" and all that follows and inserting the following: "means a course of individual and group activities and treatment, lasting at least 6 months, in residential treatment facilities set apart from the general prison population (which may include the use of pharmocotherapies, where appropriate, that may extend beyond the 6-month period);".

SEC. 253. CONTRACTING FOR SERVICES FOR POST-CONVICTION SUPERVISION OFFENDERS.

Section 3672 of title 18, United States Code, is amended by inserting after the third sentence in the seventh undesignated

148.055   **INMATE REQUEST TO STAFF** CDFRM
8

U.S. DEPARTMENT OF JUSTICE                          FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) | DATE: |
|---|---|
| Mrs Watthie | 11/13/08 |
| FROM: | REGISTER NO.: |
| Dorothea Daraio | 40894-050 |
| WORK ASSIGNMENT: | UNIT: |
| Garage | CAMP |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.) Thank you for the time you afforded me in our
meeting today. I gather as you expressed you have been directed to
consider over 6 months RRC only for extraordinary and compelling reasons.
You explained you received a publication dated 10/31/08 from
another inmate and contacted BOP legal counsel. I brought you a copy of
that publication and CFR Community Custody old Regulation. You explained
that legal counsel said there are no changes and you are to follow
the old regulation. I asked if you received any guidance or direction
after the signing of the Second Chance Act. You said no you were
still using the old and only Program Statement.
     I asked if you could put in writing what was expressed by
the legal counsel. You said you would do so if you could locate it.
Please reply with your response or acknowledge you were unable
to locate legal counsel literature. Please correct any errors.

(Do not write below this line)

DISPOSITION:

Your RRR (RRC) halfway house placement will considered with being the g my
criteria listed under the Second Chance Act.
     In regards to the publication which you for are referring - there
are no changes nom the april 1,2008 memo. It is a notice and comment
obligation published, as required by the Second Chance Act. There is no
change or additions to Second Chance Act, the change and new law
referenced in publication is that a Second Chance Act, which took effect in April

| Signature Staff Member | Date |
|---|---|
| [signature] | 11/17/08 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

♺ Printed on Recycled Paper

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member)<br>Mrs. Wattree | DATE:<br>11/13/08 |
|---|---|
| FROM:<br>Dorothea Daraio | REGISTER NO.:<br>40894-050 |
| WORK ASSIGNMENT:<br>Garage | UNIT:<br>CAMP |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

When I received my Inmate Skills Development Plan on 10/1/08 at team pages 9 and 10 were missing from the package. I signed page 11 and was handed the package on the way out.

Please supply me with the missing pages

Thank You.

Dorothea Daraio

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94


Printed on Recycled Paper

# INMATE SKILLS DEVELOPMENT PLAN
Name: **DARAIO, DOROTHEA**

**PROGRAM REVIEW: 10-01-2008**
RegNo: **40894-050**

## DAILY LIVING

| Status | Response Summary |
|---|---|
|  | **FINANCIAL MANAGEMENT**<br>⊕ knowledge in maintaining checking account<br>⊕ knowledge in maintaining savings account<br>⊕ knowledge in utilizing an ATM debit card<br>⊕ knowledge in obtaining loans<br>⊖ no positive credit history<br>⊖ did not live within financial means<br>⊖ does not pay monthly bills on time |
|  | **FOOD MANAGEMENT**<br>⊕ possesses grocery shopping/consumer skills<br>⊕ makes good nutritional choices to maintain health<br>⊕ possesses basic food preparation skills<br>⊖ no knowledge in accessing community resources to obtain food |
| ✓ | **PERSONAL HYGIENE/SANITATION**<br>⊕ good personal hygiene and sanitation<br>ⓘ quarters assignment: HOUSE O/RANGE 02/BED 025L |
|  | **TRANSPORTATION**<br>⊖ does not have valid driver's license<br>⊖ Outstanding motor vehicle violations<br><br>⊖ does not own personal vehicle with appropriate insurance<br>⊕ possesses public transportation skills and has access to public transportation |
|  | **IDENTIFICATION**<br>⊕ has photo identification<br>⊕ has birth certification<br>⊖ does not have social security card |
| ✓ | **HOUSING**<br>⊕ established housing year prior to incarceration<br>ⓘ established housing: owned or mortgage<br>ⓘ established housing: lived with family<br>ⓘ established housing: non-publicly assisted<br>⊕ established housing not in a high crime neighborhood<br><br>⊕ housing upon release<br>ⓘ not applicable - anticipated housing plan approved by USPO(s)<br>ⓘ supervision district is not a relocation<br>ⓘ no concerns with anticipated housing plan |
| ? | **RRC PLACEMENT**<br>ⓘ recommended for RRC placement<br>ⓘ recommended range: 150-180 |
|  | **FAMILY CARE**<br>⊕ not responsible for obtaining child care for any dependent children upon release<br>⊕ not responsible for obtaining elder care for any dependent(s) upon release<br>⊖ responsible for obtaining any other special services for dependents upon release: Family counseling and boarding |

## INMATE SKILLS DEVELOPMENT PLAN
Name: **DARAIO, DOROTHEA**

## PROGRAM REVIEW: 10-01-2008
RegNo: **40894-050**

### DAILY LIVING

|  | school. |
|---|---|
| **Progress and Goals** | |
|  | Ensure medical needs are met.<br>Adhere to medical restrictions. |

BP-S148.055
CDFRM

INMATE REQU̲ ̲ ̲ ̲ ̲ ̲
U.S. DEPART̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲
FEDERAL ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲

TO: (NAME ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ DATE: AUGUST 11, 2008
     MS. D. ZICKEFOOSE, WARDEN
     MRS. WATTREE, CASE MANAGER

FROM: DOROTHEA DARAIO          REGISTRATION NO: 40894-050

GARAGE                                              CAMP
WORK ASS ̲ ̲ ̲                        UNIT:

SUBJECT: (Bri̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲ d the solution you are requesting.
Continue on the ̲ ̲ ̲, ̲ ̲ ̲ su̲ ̲ ̲ ̲ ̲ ̲ spe̲ific may result in no action being
taken. If necessary you will be interviewed in ̲ ̲ to successfully respond to your
request.)

~~DURING OUR MEETING~~ ON 8/8/08 ABOUT THE BOP NOT ISSUING NEW

~~CRITERIA IN~~ GRANTING ADDITIONAL HALFWAY HOUSE IN ACCORDANCE

~~WITH PUBLIC~~ LAW 110-199, YOU REQUESTED MY REASONS FOR NEEDING

OVER 6 MONTHS HALFWAY HOUSE.

ENCLOSED ARE MY REASONS FOR NEEDING THE MAXIMUM HALFWAY HOUSE

TIME PROVIDED FOR IN THE SECOND CHANCE ACT OF 2007.

YOUR CONSIDERATION IS APPRECIATED.

DISPOSITION;

Signature of ̲ ̲ ̲                              Date

Record copy - Fi̲ ̲   ̲ ̲ nmate

I am requesting additional halfway house due to "extraordinary circumstances" that wern't known to me or the judge at the time of sentencing.

I have a minor son and I am his only guardian due to my husband's death on June 12, 2008.

I AM REQUESTING ADDITIONAL HALFWAY HOUSE TIME TO:

1.  As sole support be able to provide for my son.

2.  At 60 I will have to reinvent myself to find a new field of employment.

3.  Find placement for Tony before 12/8/08.

4.  Get counseling for Anthony's history of depression and our reunification.

5.  As Anthony's only guardian be able to take care of his medical needs.

6.  Get medical treatment for myself at my own expense.

7.  Be home with Tony on weekends and support him at school functions through weekend and evening passes.

8.  Be able to make phone contact as part of bonding.

9.  Re-establish Social Security Benefitis terminated for Anthony when my husband died.

10. Settle my husband's estate timely as required by both IRS and State tax codes.

11. Be provided the greatest likelihood of being sucessful in my reintergration into the community.

My first time felony offense will prevent me from renewing my Private Detective License so I will not be able to keep my husband's business running. At 62 I will have to find a new way to support my son and I when my prison sentence is done.

Anthony Daraio has been in boarding school for teens at risk since my incarceration in 2006. I have been notified by the boarding school he will be finished the program December 8. Now he needs a less restrictive school that meets his academic



## ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES
## INFORMAL RESOLUTION FORM

**NOTICE TO INMATE:** You are advised that prior to receiving and filing a Request for Administrative Remedy Form, you **MUST** attempt to informally resolve the complaint through your Correctional Counselor. Briefly state complaint below and list what efforts you have made to resolve your complaint informally. Also, please state names of staff contacted.

Date Informal Resolution Form Issued by Correctional Counselor: _10/7/08_

INMATE'S NAME: _Dorothea Daraio_ NUMBER: _40894-050_ QUARTERS: _Camp B-25_

1. Complaint: _I am requesting to be granted up to 1 year Halfway House time as per my Inmate Request to staff dated 8/11/08. (copy attached) I would like a written response and if denied the reasons for denial._

2. Efforts made to informally resolve: _Team meeting discussion on 10/1/08._

Names of Staff contacted: _Mrs. Wattree on 8/8/08 with copy to the Warden and Mrs. Wattree on 8/11/08. At team on 10/1/08, Mrs. Wattree, Ms Chappa and Mrs. Perkins_

Inmate's Signature: _Dorothea Daraio_ Inmate's Number _40894-050_
_Put in Mrs. Perkins Box 10/7/08._

## CORRECTIONAL COUNSELOR'S COMMENTS:

1. Date Returned to Correctional Counselor: _10/8/08_

2. Efforts made to informally resolve: _As of right now you have not been denied. Your request for more halfway house time is being reviewed. You will receive a response within 9-10 business days._

3. Names of Staff contacted: _Mrs. Wattree_

Date Informally Resolved: _____ Signature: _____
Or                                                      (Counselor)
Date Issued: _10/8/08_

Distribution: I.   If complaint is informally resolved, forward original to Warden (Attention: Program Coordinator)

II.   If complaint is NOT informally resolved, forward original attached to Administrative Remedy Form to Warden (Attention: Program Coordinator )

UNICOR FEDERAL PRISON INDUSTRIES, INC.
LEAVENWORTH, KANSAS

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: ___DARAIO, DOROTHEA___    ___40894-050___    ___CAMP___    ___DANBURY___
    LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A– INMATE REQUEST**    REQUEST FOR IMMEDIATE PLACEMENT IN COMMUNITY CUSTODY
FACILITY

SUPPORTING EXHIBITS ENCLOSED PER CFR 542.14 INITIAL FILING (BP-9)

DEPARTMENT OF JUSTICE BUREAU OF PRISONS 28CFR Part 570
(BOP Docket No. 1151-1, RIN 1120-AB51 PRE-RELEASE COMMUNITY
CONFINEMENT

INMATE REQUEST TO STAFF DATED 8/11/08 WITH REQUEST FOR COMMUNITY
CORRECTIONS PLACEMENT DATED 8/8/08

PUBLIC LAW 110-199 APRIL 9, 2008 SEC 251
PROGRAM STATEMENT COMMUNITY CORRECTIONS CENTER 7310.04 dated 7/16/98
(pages 4,5,7,8,9 and 16)

2007 ADMENDMENTS TO THE SENTENCING GUIDELINES POLICY STATEMENT
ADMINISTRATIVE REMEDY INFORMAL RESOLUTION FORM DATED 10/7/08
INMATE SKILLS DEVELOPMENT PLAN (page 5)

___10/27/08___    *Hand delivered Mrs Perkins 10/28/08*    *Dorothea Daraio*
DATE    SIGNATURE OF REQUESTER

**Part B– RESPONSE**

_____    _____
    DATE    WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE    CASE NUMBER: _____

    CASE NUMBER: _____

**Part C– RECEIPT**    *Received*
Return to:    *on 10/28/08 @ 1:15pm.*
    LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

I am requesting the OP to decide in my favor    place me immediately
in a Community Corrections Facility as my place of confinement to
enable me to work and support my orphaned, learning disabled minor
son in boarding school.   In lieu of placing him in the custody of
State Family Services.   This would be in contradiction to the
recommendation of the Inmate Skills Development Plan (page 5)
"Continue Family Ties."

The death of my husband, his father, June 12, 2008, the only family
member capable of taking care of my minor child is an extraordinary
and compelling reason under BOP Policy Statement.

I have requested, as emphasized by the law, to be considered on an
"individual basis" taking into consideration; the nature and
circumstances of the offense, the history and characteristics of the
inmate, the resources of the facility contemplated and any policy
statement issued by the Sentencing Commission pursuant to section
944 (1)(2) of Title 28.

Considering the seriousness of the offense, I have not requested
Supervised Release as indicated for my extraordinary and compelling
reason in 2007 Admendments to the Sentencing Guidelines, Policy
Statements and Official Commentary.   Reasons to warrant the reduction
are for extraordinary and compelling circumstances if the defendant
is not a danger to the safety of any other person or the community
and includes as reason the death of the defendant's only family member
capable of caring for the defendant's minor child. (copy enclosed)

I have not requested a reduction in sentence but to continue
incarceration in a place (Community Corrections Facility). Community
Corrections Policy Statement 7310.04, 12/16/98 "A CCC meets the
definition of a "penal or correctional facility."   Placing me in
Community Corrections in no way changes the prison confinement period
ordered by the judge at sentencing and does not exceed 12 months in
such a facility as per revised 28 CFR Part 570 Pre Release Community
Confinement.

I self reported to a camp.   My work record is outstanding, my fine
paid and there has never been any diciplinary problems.   Judicial
recommendation was FCI Danbury.   The BOP has my custody level minimum/
community.   I was granted and sucessfully completed two, 34 hour
furloughs due to family crisis.   When reducing my custody level the
BOP has agreed there is no security risk housing me in a Community
Corrections Facility, where I could complete 11 months remaining of
my 41 month sentence and provide financial support for my orphaned,
learning disabled son.   My extraordinary and compelling reasons were
not considered at the time of sentencing as they only occured recently.

Your prompt 10 day response either in the affirmative or denial with
reasons denied is appreciated.   Time is of the essance in continueing
with my Administrative Remedies due to my extraordinary reentry needs
and the welfare of my minor, orphaned, learning disabled son.

_____          CASE NUMBER 513038-F1   10/28/08
Dorothea Daraio 40894-050

*Delivered to Inmate*
*11/10/08  6:00PM*
*s/b P. Hmden*
*FCI/FPC  Danbury, CT*

**ADMINISTRATIVE REMEDY**
**DARAIO, Dorothea**
**Register Number: 40894-050**

**PART B - RESPONSE (513038-F2)**

This is in response to your administrative remedy in which you are requesting an individual consideration for an immediate pre-release placement to a community custody facility under the Second Chance Act of 2007 to enable you to work and support your orphaned, learning disabled minor son in boarding school. You state that this pre-release placement would in no way change the prison confinement ordered by the judge at sentencing. You are requesting to complete the remaining 11-months of your sentence in a community corrections center due to your extraordinary and compelling reasons.

A review of the record in this matter reveals that on April 29, 2005, you were sentenced in the District of New Jersey to a 41 month term of incarceration, with a 3 year term of supervised release to follow for Attempt to Evade or Defeat Tax. Your Projected Release Date from BOP custody on this sentence, via reaching your Good Conduct Time release date is September 19, 2009.

The Second Chance Act of 2007, generally speaking, alters the amount of time that the Bureau of Prisons may, in its discretion, assign inmates to Residential Reentry Centers (RRC's) for pre-release (or "end of sentence") placement under 18 U.S.C. § 3624(c), increasing the possible duration of such assignments from up to six months to up to twelve months. Following passage of the Second Chance Act in April 2008, the Bureau of Prisons and FCI Danbury undertook a re-consideration of *all inmates'* "end-of-sentence" RRC placements under the new criteria established by the Second Chance Act including consideration for placement of up to 12 months. A number of factors are considered when determining the appropriate length of RRC placements for inmates, including but not limited to, the resources of the facility contemplated, the nature and circumstances of the offense, the history and characteristics of the prisoner, the statement of the court that imposed the sentence, individual needs, disciplinary records and existing community resources.

Your individual consideration for pre-release placement to an RRC under the increased provision of the Second Chance Act has already been conducted. The individual personal and family circumstances you raise were considered at that time. On or about June 24, 2008, it was determined that a pre-release RRC placement of up to 180 days was appropriate for you and of sufficient duration to provide the greatest likelihood of successful reintegration into the community. On or about August 27, 2008, an Institutional Referral for RRC Placement was completed and forwarded to the Community Corrections Management Office in New York, for their review and determination of a placement and date. As a result of this referral, you were approved for an RRC pre-release placement to the Luzerne Community Corrections Center in Philadelphia, Pennsylvania for March 24, 2009. This constitutes a 180 day placement and is deemed of sufficient duration for your community placement.

It appears that within your Administrative Remedy Request you have raised the issue of extraordinary and compelling justification for a Reduction in Sentence, however you specifically state that you "have not requested a reduction in sentence but to continue incarceration" in a community corrections placement and that you don't seek to change the prison term imposed by the Sentencing Judge. Based on this language within your Administrative Remedy Request, this Response addresses your inquiries on your pre-release RRC placement under the Second Chance Act. If you seek to be considered for a Reduction in Sentence, and thus reduce the term of imprisonment imposed by the Court, please notify your Unit Team immediately.

Based on the above information, your request for administrative remedy is denied.

If your are dissatisfied with this response, you may appeal to the Regional Director at Bureau of Prisons, Northeast Regional Office, U.S. Customs House, 7th Floor, 2nd and Chestnut Streets, Philadelphia, Pennsylvania, 19106. Your appeal must be received by the Regional Office within 20 calendar days of this response.

_____          _____11/6/08_____
Donna Zickefoose, Warden                              Date

.4RISTOPHER J. DODD
CONNECTICUT

COMMITTEES:
BANKING, HOUSING, AND
URBAN AFFAIRS

FOREIGN RELATIONS

HEALTH, EDUCATION, LABOR,
AND PENSIONS

RULES AND ADMINISTRATION

WASHINGTON OFFICE:
4 'a RUSSELL SENATE OFFICE BUILDING
WASHINGTON, DC 20510
(202) 224–2823
TDD (202) 224–5464

STATE OFFICE:
30 LEWIS STREET, SUITE 101
HARTFORD, CT 06103
(860) 258–6940
TDD (860) 529–7498

HOME PAGE: http://dodd.senate.gov
E-MAIL: http://dodd.senate.gov/webmail

# United States Senate

WASHINGTON, DC 20510–0702

October 8, 2008

Ms. Dorothea Daraio
Inmate #: 40894-050
Federal Correctional Institution, Danbury
Route 37
Danbury, CT 06811

Dear Ms. Daraio:

I am writing to enclose a response Senator Dodd received from Ms. Donna Zickefoose, Warden, Federal Correctional Institution, Danbury, regarding your concerns with the remainder of your sentence.

I trust this information will be helpful.

Best regards,

Sincerely,

Ryan C. Drajewicz
Special Assistant to the Senator
CHRISTOPHER J. DODD
United States Senator

In reply:  Connecticut Office



**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Correctional Institution*

---

*Danbury, CT 06811*

September 23, 2008

The Honorable Christopher J. Dodd
United States Senator
30 Lewis Street, Suite 101
Hartford, Connecticut 06103

RE: DARAIO, Dorothea
     Reg. No.: 40894-050

Dear Senator Dodd:

This is in response to your correspondence concerning Dorothea Daraio an inmate currently incarcerated at the Federal Prison Camp (FPC), Danbury, Connecticut. Inmate Daraio has requested to be considered for additional halfway house placement to exceed a six-month placement under the Second Chance Act of 2007 (SCA). She is requesting additional time due to her son completing a boarding school program for kids at risk in December 2008. Additional time would allow her the opportunity to find her son a new boarding school.

Pursuant to Section 251 of the Second Chance Act of 2007, changes the Bureau of Prisons (BOP) statutory authority for making Residential Reentry Center (RRC) placement decisions and requires the BOP to issue regulations on this matter not later than 90 days after enactment of the Act. The BOP communicated guidance to its field institutions shortly after enactment of the Second Chance Act to provide BOP personnel with guidance well in advance of regulations, which are currently being developed.

The Bureau of Prisons (BOP) goal is to place inmates in Residential Reentry Centers (RRCs) for the amount of time necessary to provide the greatest likelihood of successful reentry into the community. BOP staff make RRC placement decisions on an individual basis based on the following criteria: an inmate's need for reentry services; the resources and ability of the RRC to meet the offender's needs; the nature and circumstances of the inmate's offense, the inmate's history, and any potential risks to public safety; any statement by the sentencing court regarding a period of community confinement; and the need for the BOP to manage the inmate population in a responsible manner. Because the Second Chance Act prescribes the maximum amount of time for which inmates are eligible for RRC placement as 12 months, BOP staff are reviewing each inmate for RRC placement 17 - 19 months before the inmate's projected release date. It is the BOP's experience that inmates'

# INMATE SKILLS DEVELOPMENT PLAN

Name: **DARAIO, DOROTHEA**

**PROGRAM REVIEW: 10-01-2008**

RegNo: **40894-050**

## INTERPERSONAL

| Status | Response Summary |
|---|---|
| ✔ | **RELATIONSHIPS**<br>⊕ no adverse life experiences<br>⊕ no negative peer influences prior to incarceration |
| ❗ | **FAMILY TIES/SUPPORT SYSTEM**<br>⊙ insufficient expected support to warrant positive Family Ties and Support System<br>    Spouse: Emotional<br>    Immediate Family: Emotional<br>    Friend: Emotional |
| ❗ | **PARENTAL RESPONSIBILITY**<br>⊙ children under the age of 21<br>ⓘ contact maintained with children<br>ⓘ no contact with other parent<br>ⓘ due to: Husband died during incarceration.<br><br>⊕ consistent financial support for all children legally responsible for<br><br>ⓘ RRC (MINT) Placement is not applicable |
| ❓ | **COMMUNICATION** |

| | Progress and Goals |
|---|---|
| | Continue - Maintain family ties. |

## WELLNESS

| Status | Response Summary |
|---|---|
| ❗ | **HEALTH PROMO/DISEASE PREVENT**<br>⊙ overweight<br>ⓘ height 5 ft. 9 in.<br>ⓘ weight (lbs) 204<br>ⓘ BMI Score 30.1<br>ⓘ date calculated 09-25-2008<br><br>⊙ no regular exercise<br><br>⊕ no evidence of behaviors associated with increased risk of infectious disease<br><br>⊕ does not use tobacco (cigarettes, cigars, and/or smokeless tobacco)<br><br>⊕ had a primary care provider or clinic (prior to incarceration)<br>⊕ has health insurance coverage upon release |
| ❗ | **DISEASE/ILLNESS MANAGEMENT**<br>⊕ complies with treatment recommendations and/or takes medications as prescribed, or none required<br><br>⊙ medical Care Level II (Chronic care - stable) |

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: ☒ Dorothea Daraio     40894-050     Camp     Danbury

         LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A - REASON FOR APPEAL**

            Enclosed please find:

                One page attachment with reason for appeal dated 11/12/08
                                            (4 copies)

                Exhibits (1 copy each): This is second copy of following

                Letter dated 10/08/08 from Ryan C. Drajewicz
                Letter dated 09/23/08 signed by Warden Zickefoose
                Program Statement 5050.46 page 2
                Warden Zickefoose's response to Admin. Remedy dated 11/06/08
                Request for Administrative Remedy with exhibits
                Also enclosed two copies of my son's learning
                Evaluation received after 11/12/08 pages 1-8

   11/12/08                     Dorothea H. Daraio 11/16/08

     DATE          7001 0360 0000 1444 0372 SIGNATURE OF REQUESTER 7001 0360 0000

**Part B - RESPONSE**

_____             _____
        DATE                                 REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE            CASE NUMBER: _____

**Part C - RECEIPT**

                                          CASE NUMBER: _____

Return to: _____
               LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____             _____
        DATE                         SIGNATURE, RECIPIENT OF REGIONAL APPEAL

USP LVN            PRINTED ON RECYCLED PAPER                                       BP-230(13)
                                                                    JUNE 2002

I am requesting immediate transfer to Community Custody as part of pre-release under 18 USC 3624(c). The 2nd, 3rd, 8th, 9th, and 10th circuits have all issued opinions all agreeing in 18 USC 3624(c) word "shall" (surely imposed an affirmative obligation on the BOP whenever practicable, to place an inmate in a CCC or other form of community confinement as the inmate's release date nears for a (maximum of 12 months)as part of reentry of that prisoner into the community and has no bearing on whether a CCC may be considered a place of imprisonment at some earlier point in a prisoner's period of incarceration. The BOP is required by 18 USC 3621 to make placement decisions on an individual basis and consider during approval or denial process all factors in 18 USC 3621(b) on an "individual basis" as emphasized. (The BOP must ensure placement under pre-release conditions except where no such placement is practicable.)

The Warden's response to a Senatorial inquiry dated 09/23/08 indicates BOP communicated guidance and this guidance was "reentry needs can usually be met with 6 months or less in RRC placement beyond 6 months will only be approved upon a showing of an inmate's extraordinary and compelling reentry needs. (BOP's own Program Statement 7310.04), 12/16/98 page 8(1) "with placement beyond 180 days highly unusual and only possible with extraordinary justification"). Proofs enclosed indicate this was the only guidance decision making people had on 06/24/08 and that BOP revised regulations were not promagated until 10/21/08 (over 3 months later than required by law).

In response to the Senatorial inquiry the Warden indicates my reason for requesting additional halfway house is to find a boarding school placement for my son as of 12/08/08. She indicates 180 days is sufficient. "Furthermore, this will provide inmate Daraio sufficient time to address her family needs." She apparently was not aware of my extraordinary and compelling needs as required by BOP directive when she made her decision on 06/24/08. (My son would be homeless if I was unable to work to pay for boarding school placement between 12/08/08 and 03/24/08.

After BOP issued revised regulations on 10/21/08, I received a response from the Warden dated 11/06/08. She explains the Second Chance Act and factors to be considered in the decision making process. She does not mention that extraordinary and compelling reasons are necessary to grant a maximum of 12 months as part of pre-release. She does say individual needs should be considered. My extraordinary and compelling circumstances are my "individual needs".

Warden Zickefoose has granted me 180 days halfway house. I am requesting to be transferred immediately to Toler House, Newark, NJ located in my state of residence and where my Court of Jurisdiction is, or to Luzern Community Corrections Center, Philadelphia, PA. Her response in granting me 180 days does not indicate any denial for not meeting all the criteria in 18 USC 3621. I am at minimum/community custody, the level necessary for placing inmates in Community Corrections.

In my request for Community Custody I included the Compassionate Release Procedure statement to show the magnitude of my extraordinary and individual circumstances. I never asked to be considered for anything but Community Custody. In closing the Warden indicated her decision was based on me asking for relief in the wrong venue. Since the issues I raised were so extraordinary and compelling that there is justification for me to go to my Unit Team immediately. However, my next Unit Team is not scheduled until January 2009. Directions to contact the Unit Team conflict with Program Statement 3030.46 CFR 571.61 and 18 USC 3582(c)(1)(1). I have enclosed directory Initiation of Request – Extraordinary or Compelling Circumstances shall be submitted to the <u>WARDEN</u>.

The foregoing statements and enclosures reinforce my opinion to the naivete of the Warden concerning Law, Procedure Statement, BOP Regulations and my individual needs when making her decision of 06/24/08 and in her review of 11/06/08.

I pray you will consider my request on the basis provided by law including "individual need" and transfer me immediately to Community Custody.

_Dorothea Daraio_        Case Number 513038-F2     11/12/08
Dorothea Daraio 40894-050

Dear Mom,                                                          9/16/2008

Before I came to the Family Foundation School I was a monster. I was not the son you and Dad wanted me to be. I stole, lied, manipulated, cheated, I destroyed your house numerous times, I hit you, I didn't go to school, I cursed and said very hurtful things, didn't come home until real late, etc. I remember the one time when you tried getting me to school and I said no. You called the cops and I flipped out. I ran into your room knocking off all of the stuff off your dressers. I went up to you coffee table and I grabbed your nice plates and threw them at your TV, then when I tried running down stairs you grabbed me and I hit you. After that I still didn't stop. I ran down stairs and destroyed your down stairs. I am so sorry that I put you threw all of that. That wasn't the only thing but that stuck out to me the most. I didn't care about anyone but myself. I felt that life wasn't fair. In my eyes you and dad were always fighting and that upset me. I didn't take into consideration that you and dad as well had your problems. I also felt like you and dad were never there but you were, I just refused to go out to dinner with you and go on vacations. Also I was always out getting high or being destructive with my friends. Now I can say I feel happy again, I am the closest I have ever been to you and yet we are so far apart. I may have my ups and downs in life but over all I am happy.  Being here helped clear my head and helped me see how much of a tyrant I was at home. I now have a new perspective on life. Now I can say I have I positive goal worth trying to reach. I have gained a new better way of living. I now have honorable principles in my life that I will upkeep when I leave. I have improved in a lot of aspects of my life. I now want to finish school; I'm honest, unselfish, loving, obedient, and forgiving. I now focus on what I

have, not on what I don't have. Don't get me wrong I am not these good things all the time, I still mess up a lot but what I do instead is I go back and I make it right and fix what I did wrong and make my amends if necessary. Another thing I have gained since I have been here is I good relationship with God, at home I had nothing. Prayer was the last resort. Now it is my first resort most of the time. When I leave here I will be respectful, honest, helpful, hardworking, caring, and loving. If I fall short on any of these (and I will) I will pick my self up and start over. Once again I will not be anywhere near perfect but this time I will try. Further down the road when I transfer schools I want to be the same as I am at the family school, well behaved, respectful, sober, and honest. I will finish high school and go to college for law and order and business and finish it. To reach this goal I have to do the following: work hard in school, stay far from old friends drugs and my brothers and sisters bad behavior, stick to positive people and old graduates that are still doing good, focus on the good in life not the bad and on what I have and not what I don't have, I cant be afraid to stick up for what is right not be afraid to say no, I have to be confident that I will do good and everything will be ok. Things like drugs/alcohol, old friends, negative thinking, hanging out with brothers and sisters to much, giving up, not going to school, letting my anger get to the best of me, not keeping up with my prayer life, etc., will prevent me from reaching that goal so I will avoid these things at all cost. I want to thank you for making the decision to send me away, because if I never got sent away I wouldn't be the person I am today, don't get me wrong I still don't want to be here and I hate some of the rules but at the same time I do recognize that it saved my life. If I never came to the family school one of three things would have happened, I would

have died, got sent to jail, or turned into a no body like most of my brothers and sisters. I wouldn't have had an education and I would have been a no body.

Some things you can expect from me when I leave:

- I will be respectful and follow all the rules of the house.

- I will not get tattoos or piercings

- I will help around the house and clean up after my self

- I will go to school and work hard

- No drugs, alcohol, or cigarettes

- No old friends

- I will hang out with graduates from this school that are doing good.

- I will be supportive and not curse

If I ever start up old behavior I don't want you to let me stay in your house, no money, no help, and no second chances. Make me work and prove to you that I want to do the right thing. I know what I have to do in life to be successful and to be a good person I just have to do it. I learned everything I need to know to be a man I just have to put it into practice. Don't treat me like my brothers and sisters and give me tons of chances because I will not learn anything. I am truly sorry for how I acted at home before I came to the Family School, but I am finally ready to come home and prove to you I can be a man. I'm ready to be the son you and dad wanted me to be.

Love,

Tony