UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DOROTHEA DARAIO | : |
| | : |
| Petitioner, | : |
| | : |
| v. | : PRISONER |
| | : NO. 3:08CV1812(MRK) |
| HARLEY G. LAPPIN, Director, | : |
| Federal Bureau of Prisons, and | : |
| DONNA ZICKEFOOSE, Warden, | : |
| FCI-Danbury, | : |
| | : |
| Respondents. | : |

## RULING AND ORDER

On December 1, 2008, Ms. Daraio, *pro se* and currently incarcerated, filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody [doc. #1] seeking an immediate release to a Residential Reentry Center ("RRC") under the Second Chance Act of 2007, Pub. L. 110-199, 122 Stat. 657 (April 9, 2008) ("Second Chance Act"). Upon receipt of Ms. Daraio's application, the Court issued an Order to Show Cause [doc. # 2] directing the United States Attorney to show cause on or before January 4, 2009 why the relief sought in Ms. Daraio's application should not be granted.

The Court granted in part and denied in part the United States Attorney's thirty-day motion for an extension of time, *see* Order [doc. # 9], and ordered the United States Attorney to respond to Ms. Daraio's application by January 20, 2009. After an on-the-record telephonic conference on January 16, 2009 with the United States Attorney, the Federal Bureau of Prisons ("BOP"), and Ms. Daraio, the Court granted Ms. Daraio until January 30, 2009 to reply to Respondent's Response to Petitioner's Prayer for Habeas Corpus Petition [doc. # 17]. After moving for an extension of time [doc. # 19], Ms. Daraio timely filed her Response to Respondent's Answers for Writ of Habeas

Corpus [doc. # 22] [hereinafter Reply].

The Court has considered the parties' submissions in their entirety, including Ms. Daraio's Reply [doc. # 22]. The Court is sympathetic to Ms. Daraio's family needs and commends her tireless advocacy on behalf of herself and her son. However, for the reasons that follow, the Court DENIES Ms. Daraio's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody [doc. # 1].

## I.

A brief recitation of the relevant facts and procedural history follows. Ms. Daraio is currently confined to the Federal Correctional Institution and Federal Prison Camp in Danbury, Connecticut ("FCI Danbury") after having been sentenced on May 5, 2005 by the District Court of New Jersey to forty-one (41) months' imprisonment for tax evasion. Ms. Daraio appealed, and on April 10, 2006, the United States Court of Appeals for the Third Circuit affirmed Ms. Dario's conviction and sentence. *See United States v. Daraio*, 445 F.3d 253, 266 (3d Cir. 2006). Her petition for certiorari was denied by the United States Supreme Court on January 8, 2007. *See Daraio v. United States*, 549 U.S. 1111 (2007). Ms. Daraio then filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, which was denied by the District Court of New Jersey in May 2008. *See Daraio v. United States*, No. 07-4295, 2008 WL 2036808 (D.N.J. May 9, 2008). With good time credit applied, Ms. Daraio is currently scheduled to complete her term of imprisonment on September 19, 2009.

Prior to her incarceration, Ms. Daraio's husband was already terminally ill, and on June 12, 2008, he lost his battle with asbestosis.[1] According to Ms. Daraio, this effectively orphaned the

---

[1] Ms. Daraio was granted a crisis furlough to enable her to be at her husband's bedside in the hospital while he was dying, and was granted a second furlough to attend his funeral.

couple's learning disabled, seventeen-year-old son. Although Ms. Daraio made a series of informal requests to her Unit Team to be transferred to a halfway house for the last twelve months of her sentence, these requests were denied. On or about October 27, 2008, Ms. Daraio filed a formal administrative remedy with FCI Danbury's Warden, Donna Zickefoose, requesting individual consideration for an immediate pre-release placement to community confinement under the Second Chance Act. According to Ms. Daraio, such a community placement would enable her "to work and support [her] orphaned, learning disabled minor son [who currently is] in boarding school." *See* Application [doc. # 1] at 30.

On November 10, 2008, Ms. Daraio received a response from Warden Zickefoose dated November 6, 2008 that denied the request for pre-release community confinement in excess of 180 days. *See id.* at 31. The denial was based on the BOP's review of Ms. Daraio's "end of sentence" placement after the passage of the Second Chance Act and its determination, dated June 24, 2008, that "a pre-release RRC placement of up to 180 days was appropriate for [Ms. Daraio] and of sufficient duration to provide the greatest likelihood of successful reintegration into the community." *Id.*; *see also* Resp.'s Response to Petr.'s Prayer for Habeas Corpus Petn. [doc. # 17] Ex. C. In accordance with the BOP's June 24, 2008 determination, Ms. Daraio is scheduled to be transferred to pre-release custody at an already-identified RRC on March 24, 2009.

On November 12, 2008, Ms. Daraio appealed Warden Zickefoose's denial of her administrative remedy to the BOP's Regional Director. On December 1, 2008, while her appeal was still pending, Ms. Daraio filed this action under 28 U.S.C. § 2241 on the basis of her son's then-anticipated discharge from his boarding school on December 9, 2008. On December 12, 2008, the Regional Director denied Ms. Daraio's appeal, thereby affirming Warden Zickefoose's decision of 180 days of pre-release community confinement in an RRC. The Regional Director stated that Ms.

3

Daraio's situation was reviewed "under the criteria of the Second Chance Act, and it was determined the [180 day] RRC placement period was appropriate to provide [her] with the best opportunity to successfully transition back into the community." *See* Mot. for Default J. in Favor of Petr.'s Application for Writ of Habeas Corpus [doc. # 12] at 11.  On December 18, 2008, Ms. Daraio appealed the Regional Director's decision to the BOP's General Counsel.  On January 5, 2009, the BOP's General Counsel rejected her appeal because Ms. Daraio failed to provide a copy of the Regional Appeal and Response to the BOP's General Counsel.  Ms. Daraio then had fifteen days from the date of the General Counsel's notice of rejection to resubmit her appeal.  Although she has not yet received her receipt of mailing from FCI Danbury, Ms. Daraio states that she resubmitted her appeal to the BOP's Central Office on January 20, 2009.

In addition to reviewing Ms. Daraio's administrative remedy under the Second Chance Act, the BOP also considered Ms. Daraio for compassionate release under 18 U.S.C. § 3582, primarily on the basis of her son's emotional, financial, and custodial needs.  However, the United States Attorney objected to such a release because it was determined that Ms. Daraio had adult family members who could care for her son upon his discharge from boarding school.  Although the BOP initially declined Ms. Daraio's request for compassionate release, it has since decided to reconsider Ms. Daraio's request for this particular form of relief.  This reconsideration was prompted by a recent custody dispute over Ms. Daraio's son that occurred after she filed this action.  Pending resolution of the custody dispute, Ms. Daraio's son has been placed in the care and custody of another boarding school.  This school placement occurred on or about January 9, 2009.

## II.

### A.

As an initial matter, the Court briefly addresses Respondents' argument that Ms. Daraio's

4

Application should be dismissed for failure to exhaust her administrative remedies. According to Respondents, Ms. Daraio initiated this case before exhausting her administrative remedies, and moreover, failed to complete the administrative process because she did not resubmit her appeal to the BOP's General Counsel. Ms. Daraio does not contend that she completed the BOP's Administrative Remedy Program before commencing this action. Rather, she argues that administrative exhaustion would be futile.

The Second Circuit has made clear that a petitioner must exhaust her administrative remedies prior to filing an action under § 2241. *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001) (citing *Gonzalez v. Perrill*, 919 F.2d 1, 2 (2d Cir. 1990) (per curiam)). However, the Second Circuit has also stated that exceptions to the exhaustion requirement do exist where exhaustion is not statutorily mandated and where "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (quotation marks omitted). The purposes of exhaustion have been recognized as "protecting the authority of administrative agencies, limiting interference in agency affairs, and promoting judicial efficiency by resolving potential issues and developing the factual record." *Id.* at 56. Thus, to argue that exhaustion is futile is to argue that the purposes of exhaustion will not be met by the administrative process. *See id.* at 62.

The BOP's Administrative Remedy Program allows an inmate to seek formal review of an issue relating to any aspect of her imprisonment. *See generally* 29 C.F.R. §§ 542.10-542.19. Under the Program, an inmate shall first present an informal request to staff concerning the relevant confinement issue, and if informal resolution is unsuccessful, may submit a formal, written request

5

for administrative remedy. *See id.* §§ 542.13-542.14. After the inmate submits the requisite BP-9 form to the Warden for consideration, the Warden has 20 calendar days to respond. *See id.* § 542.18. If the inmate is dissatisfied with the response, she may take an appeal to the appropriate BOP Regional Director within 20 calendar days through use of the requisite BP-10 form. *See id.* § 542.15. If such an appeal is taken, the Regional Director has 30 calendar days to respond. *See id.* § 542.18. If the inmate continues to be dissatisfied after the Regional Director's response, she has 30 calendar days from the date of that response to take an appeal to the BOP General Counsel through use of the requisite BP-11 form. *See id.* § 542.15. The General Counsel then has 40 days to respond. *See id.* § 542.18. When a submission is rejected and the basis for the rejection is correctable, the inmate must be provided a reasonable time to correct and resubmit her appeal. *See id.* § 542.17.

Respondents argue that Ms. Daraio had failed to exhaust her administrative remedies when she filed this action on December 1, 2008, only five weeks after she initiated her formal remedy process on or about October 27, 2008 and while her appeal to the BOP Regional Director was still pending. Respondents argue that Ms. Daraio's lack of exhaustion is further evidenced by her failure to resubmit her appeal to the BOP General Counsel. According to Respondents, without an inmate's proper utilization of the BOP's Administrative Remedy Program, "the [BOP] cannot create a complete factual record regarding the necessity of placement in a RRC or home confinement." *See* Resp.'s Response to Petr.'s Prayer for Habeas Corpus Petn. [doc. # 17].

In response, Ms. Daraio argues that, given the BOP's responses to her informal and formal requests thus far, exhaustion would be futile. In addition, she contends that the BOP rarely, if ever, grants pre-release community confinement in excess of 180 days, although specifically authorized to do so under the express terms of the Second Chance Act. *Accord* Resp.'s Response to Petr.'s Prayer for Habeas Corpus Petn. [doc. # 17] Ex. A at 4 ("BOP Memorandum dated April 14, 2008:

6

Pre-Release Residential Re-Entry Center Placements Following the Second Chance Act of 2007") ("While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence . . . ."). Ms. Daraio further alleges that the BOP attempted to foreclose her challenge to the amount of time it afforded her in pre-release custody by failing timely to enter her appeals in the BOP's Administrative Remedy Index and by erroneously rejecting her final appeal to the BOP's General Counsel.

Although the Court is well-aware that exhaustion is generally required before an action may be brought under § 2241, given the particular circumstances of this case – including, but not limited to, Ms. Daraio's argument that an appeal to the BOP would be futile, the obvious urgency of her Application, the extent of the factual record now before the Court, and the near certainty that forcing Ms. Daraio to re-file an administrative remedy will render this case moot – the Court will address the merits of Ms. Daraio's claim under the Second Chance Act, rather than decide this case on exhaustion grounds. The Court does so without in any way expressing a view on the merits of the exhaustion defense in this case.

**B.**

The Second Chance Act of 2007 amended 18 U.S.C. § 3624(c) to provide as follows:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

*See id.* § 3624(c)(1). The Act further instructed the Director of the BOP to issue regulations no later

7

than ninety (90) days after the Act became effective on April 9, 2008 to ensure that pre-release placement is determined on an individual basis in accordance with 18 U.S.C. § 3621(b) and of "sufficient duration to provide the greatest likelihood of successful reintegration into the community." *See id.* § 3624(c)(6).

On October 21, 2008, the BOP issued interim rules that immediately took effect to ensure that current regulations conformed to the mandates of the Second Chance Act. *See* Pre-Release Community Confinement, 73 Fed. Reg. 62440 (Oct. 21, 2008) (to be codified at 28 C.F.R. pt. 570). The rules provide that BOP "[i]nmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's imprisonment, not to exceed twelve months" and that such consideration will be "consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part." *See id.* at 62443.

An individual sentenced to a period of federal imprisonment is committed to the custody of the BOP under 18 U.S.C. § 3621(a). Once the person has been committed, the BOP is obligated to designate that individual's place of imprisonment, but has discretionary authority in making the initial placement determination and in directing the transfer of a prisoner from one penal or correctional facility to another. *Id.* § 3621(b); *see Levine v. Apker*, 455 F.3d 71, 80 (2d Cir. 2006) ("Congress's use of the language 'may designate' in § 3621(b) seemingly endows the BOP with 'broad discretion.'"). In determining such placements and transfers, the BOP must consider the following five factors: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence . . . ; and (5) any pertinent policy statement issued by the Sentencing

Commission pursuant to section 994(a)(2) of title 28." § 3621(b); *see Levine*, 455 F.3d at 81 ("Significantly, Congress used the word 'and' rather than 'or' to unify its five concerns. All of the listed factors must therefore be considered.").

Although the BOP must consider all five statutory factors in its placement determination, the list is non-exclusive. *See Levine*, 455 F.3d at 86 ("We read the § 3621 factors as non-exclusive, and this certainly permits the BOP to consider the portion of time served in making placements, but such an unlisted factor cannot unilaterally and categorically supplant the statutory list."). As a result, it is permissible for the BOP to search for "extraordinary justification" before granting an RRC placement in excess of 180 days provided that the BOP considers the five-factor statutory list. *See Miller v. Whitehead*, 527 F.3d 752, 757-58 (8th Cir. 2008) (citing *Levine*, 455 F.3d at 86). This is so because "extraordinary justification" essentially acts as a "standard for deciding whether to grant a request for extended placement in an RRC." *Id.* at 757.

Furthermore, the BOP retains discretion under the Second Chance Act to decide whether and when an inmate should be placed at an RRC, provided such pre-release confinement is practicable and the BOP considers the statutory factors. *See* § 3624(c)(1) ("The Director of the [BOP] shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for [her] reentry . . . into the community."); *see also* § 3621(b) ("The Bureau *may* at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another." (emphasis added)); *Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("Congress' use of the permissive 'may' . . . contrasts with the legislators' use of a mandatory 'shall' in the very same section. Elsewhere in § 3621, Congress used 'shall' to impose discretionless obligations . . . ."); *Levine*, 455 F.3d at 80 ("Congress's use of the

language "may designate" in this provision seemingly endows the BOP with "broad discretion."). As the Second Circuit explained in *Levine*, "'the statute indicates that the BOP *may* place a prisoner where it wishes, *so long as* it considers the factors enumerated in § 3621.'" *Levine*, 455 F.3d at 82 (quoting *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 245 (3d Cir. 2005)).

In addition to the language Congress chose, the legislative history of the Second Chance Act also reveals Congress' intent to place RRC placement decisions within the discretion of the BOP:

> [Section 251] . . . afford[s] the Director of the Bureau of Prisons the discretion to place an offender in a halfway house for up to 12 months prior to the offender's release date.
>
> [Section 251] also amends section 3561 of title 18, United States Code, to prohibit Federal judges from sentencing defendants to a community correction facility. The section reiterates that the Bureau of Prisons has sole and exclusive authority to designate the facility where prisoners will serve a sentence and to order a transfer from one facility to another. In addition, the [BOP] has the sole and exclusive authority to determine when and if a prisoner should be transferred or designated to a community correctional facility, which typically occurs near the end of the prisoner's sentence.

H. Rep. No. 110-140, *20, reprinted in 2008 U.S.C.C.A.N. 24, *38 (May 9, 2007); *see Levine*, 455 F.3d at 82 ("Given the clarity of the text, we need not turn to legislative history. Such an inquiry, however, supports our reading" of the act.). In this case, the BOP reviewed Ms. Daraio's reentry needs in accordance with the Second Chance Act, considered each of the statutory factors set forth in § 3621(b), and determined that 180 days of community confinement was sufficient to afford her a reasonable opportunity to prepare for reentry.

Although Ms. Daraio is dissatisfied with the BOP's resolution of her request, it is apparent that the BOP reviewed her request for an immediate RRC placement in accordance with the requirements of the Second Chance Act after considering the statutory factors set forth in § 3621(b). Warden Zickefoose's response to Ms. Daraio's formal administrative remedy states as follows:

"Following passage of the Second Chance Act in April 2008, the [BOP] and FCI Danbury undertook a re-consideration of *all inmates'* 'end of sentence' RRC placements under the new criteria established by the Second Chance Act including consideration for placement of up to 12 months." *See* Application [doc. # 1] at 31. Warden Zickefoose stated that these determinations took into account the statutory factors as well as other factors including, but not limited to, individual needs, disciplinary records, and existing community resources. *See id.* Warden Zickefoose's Response further represented that Ms. Daraio's consideration for pre-release placement was made under the increased, or twelve-month, allowance of the Second Chance Act, and it specifically referenced the extraordinary and compelling reasons that Ms. Daraio asserted in her request, which Warden Zickefoose characterized as pre-release custody to enable Ms. Daraio "to work and support [her] orphaned, learning disabled minor son in boarding school." *Id.*

Similarly, the Regional Director recognized Ms. Daraio's asserted need to "work and support [her] orphaned, learning disabled, minor son." Mot. for Default J. in Favor of Petr.'s Application for Writ of Habeas Corpus [doc. # 12] at 11. Despite acknowledging Ms. Dario's special circumstances, the Regional Director denied Ms. Daraio's appeal in a Response dated December 12, 2008 that states as follows: "Staff considered the fact that you have family support, sufficient financial resources and marketable job skills in the community [in their determination of 180 days' RRC placement]. Your situation was reviewed again under the criteria of the Second Chance Act, and it was determined the above RRC placement period was appropriate to provide you with the best opportunity to successfully transition back into the community." *Id.* The Regional Director's Response recognized Ms. Dario's family circumstances – circumstances that have since changed – but denied her request for relief.

On or about January 9, 2009, Ms. Daraio's learning disabled, minor son was placed at another

boarding school. During the on-the-record telephone conference dated January 16, 2009, the Court raised the possibility that circumstances might have changed such that Ms. Daraio's Application is now moot. Although Ms. Daraio acknowledges that her son is no longer facing an immediate threat of homelessness, she maintains that extraordinary circumstances nonetheless persist. For example, Ms. Daraio argues that immediate release to an RRC placement is necessary to allow her to begin working, to avoid foreclosure on her marital home, and to provide for her son's emotional and financial needs. *See generally* Reply [doc. # 22]. The Court recognizes Ms. Daraio's continued disagreement with the BOP over whether she has shown "extraordinary circumstances" and should therefore be afforded more than 180 days of pre-release community confinement at an RRC. However, she has presented the Court with no arguable legal basis for disturbing the BOP's discretionary determination following its consideration of the statutory factors. As a result, the Court denies Ms. Dario's request for relief under § 2241 and the Second Chance Act.

      Finally, the Court notes that Ms. Daraio's Application did not request a reduction in sentence. *See* Application [doc. # 1] at 30; *see also* Reply [doc. # 22] at 9 (conceding that Ms. Daraio did not seek a sentence reduction from this Court). However, based on Ms. Daraio's requests to the BOP and Respondents' independent review of her family circumstances, the BOP has twice considered her for compassionate release under 18 U.S.C. § 3582(c). During its first review, the Department of Justice objected to compassionate release, and the BOP ultimately denied Ms. Daraio the opportunity for a reduction in her sentence. *See* Resp.'s Response to Petr.'s Prayer for Habeas Corpus Petn. [doc. # 17] Ex. 1 at 3-4, ¶ 13; *see also id.* Ex. G; Reply [doc. # 22] Exs. 33, 36-37. However, as a result of the recent custody dispute concerning Ms. Daraio's minor son, the BOP and FCI Danbury have decided to reconsider Ms. Daraio for compassionate release. *See id.* Ex. 1 at 4, ¶ 15. During the on-the-record telephone conference dated January 16, 2009, the parties confirmed that

the BOP has begun its reconsideration of Ms. Daraio for compassionate release but informed the Court that it could take up to several weeks to reach a final recommendation regarding any possible reduction in Ms. Daraio's sentence.

The placement of Ms. Daraio's son in a boarding school on or about January 9, 2009 may well affect the BOP's consideration of a reduction in Ms. Daraio's sentence for extraordinary and compelling reasons. However, given Ms. Daraio's statements during the on-the-record telephone conference that she is the only family member who can provide her son with the level of emotional and financial support that he needs and the additional arguments that she raises in her Reply [doc. # 22] regarding the possible foreclosure on her marital home, the Court urges the BOP to move as expeditiously as possible in their reconsideration of Ms. Daraio's request for compassionate release. This need to move quickly is all the more apparent because of Ms. Daraio's scheduled release to an RRC on March 24, 2009.

### III.

The Court is sympathetic to Ms. Daraio's family needs as well as her frustration with the BOP over what she perceives as a failure to provide her with an adequate explanation of how it applied the Second Chance Act to her individual case. However, the Court does not believe that Ms. Daraio's frustration is sufficient to justify disturbing the BOP's decision to grant her 180 days of pre-release community confinement at an RRC. This is especially so because the BOP has discretionary authority to determine when and if an inmate will be transferred to community confinement and because it appears that in this case, the BOP made its determination in accordance with the Second Chance Act after considering each of the statutory factors listed in 18 U.S.C. § 3621(b). Once Ms. Daraio is placed at an RRC, the BOP has discretion to place her on home confinement for the final ten percent of her term of imprisonment. *See* § 3624(c)(2) ("The authority under [§ 3624(c)] may

be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."). Ms. Daraio's particular circumstances may well justify such action.

Accordingly, the Court DENIES Ms. Daraio's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody [doc. #1]. The Clerk is directed to close this file.

IT IS SO ORDERED.

/s/      Mark R. Kravitz      
       United States District Judge

**Dated at New Haven, Connecticut: February 9, 2009.**